CASTLEBERRY v. TYLER COMMERCIAL COLLEGE. (No. 2189.)

(Court of Civil Appeals of Texas. Texarkana. Dec. 22, 1919. Rehearing Denied Jan. 8, 1920.)

1. COLLEGES AND UNIVERSITIES ☞9—AGREEMENT BY STUDENT TO ALLOW SCHOOL TO PICK BOARDING PLACE; "BOARD."

Where a business college reserved the right to require its students to board in homes approved by the college, the word "board" means lodging, and the college might require a student to change her lodgings.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Board.]

2. CONTRACTS ☞108(2)—AGREEMENT BY STUDENT TO BOARD IN HOME APPROVED BY COLLEGE NOT CONTRARY TO PUBLIC POLICY.

A contract between a business college and a pupil, requiring the pupil to board in homes approved by the college, is not contrary to public policy.

3. COLLEGES AND UNIVERSITIES ☞9—EXCLUSION OF PUPIL FROM BUSINESS COLLEGE WHO REFUSED TO BOARD IN HOME APPROVED BY COLLEGE WARRANTED.

Where a written contract between a pupil and a business college provided that the school reserved the right to require students to board in homes approved by college, a pupil who refused to change her place of residence when requested by the college might be refused further instruction until she changed her residence as required, and such pupil cannot demand that she be given 3½ months' instruction under the provision that, if a student disregards regulations, the scholarship would be limited to that period.

Appeal from District Court, Smith County; J. R. Warren, Judge.

Action by Grace Castleberry against the Tyler Commercial College. From a judgment for defendant, plaintiff appeals. Affirmed.

August 20, 1918, appellant entered into a contract with appellee by the terms of which she became entitled, by complying with appellee's regulations, to a "complete course of shorthand" in its school. The contract was in writing and contained stipulations as follows:

"If a student * * * disregards the regulations of the school, * * * this scholarship will be limited to the average time of 3½ months.

"The school reserves the right at all times to require its students to board in homes approved by the college, and to cancel this scholarship and require the withdrawal of any one deemed by the management injurious to the best interest of the school."

Having secured rooms at Mrs. Alford's, on South College street, and board at Mrs.

Christians' on South Broadway, in compliance with appellee's instructions to her, appellant on said August 20, 1918, began to attend appellee's school in the city of Tyler. She continued to room at Mrs. Alford's, and to attend said school until November 21, 1918, when, she alleged, she was expelled from the school by appellee. Afterwards she brought this suit to recover damages she alleged she had suffered as a result of appellee's act, which, she charged, was a breach of the contract. She was the only witness at the trial. She testified that on November 17, 1918, appellee requested her and six other young ladies attending its school and rooming at Mrs. Alford's, as appellee had directed them to, to move to another rooming house. Five of the six other young ladies complied with the request. The other one of the six did not comply with it, and she (appellant) refused to comply with it. The request to appellant was repeated November 21, when, she claimed, she was expelled from the school. She said:

"He (Cuthberson, principal of the school) asked me why I did not move, and I told him that I did not intend to move; that I had come here to go to school, and was not going to move. He said, 'Why did I come back to school?' and I told him I had a right to come, and he gave me a 'pass,' and also called Mr. Roberts (appellee's vice president and manager) and asked him what he must do about it. He told him I had refused to move, and Mr. Roberts said 'Give her a pass out of the building.' No; I did not get out then, at that time, but went back to my typewriting class after that. The principal had told me that I would have to get out of the building.

"He said I would have to get out of the school; that I could not continue in school until I moved from my rooming place. * * * When the principal demanded that I leave the rooming house at Mrs. Alford's he assigned no reason whatever for his demand. * * * If I had been permitted to stay, I would have finished my course. I could have gone to another boarding or rooming house, and stayed there, and completed my course. Unless I had been put out for some other cause, I could have just changed my boarding house, and just stayed there and completed my course."

The trial court thought appellant was not entitled to recover on the case made by the testimony, and instructed the jury to return a verdict in favor of appellee. The appeal is from a judgment in accordance with such a verdict.

Puntney & Puntney, of Amarillo, and Price & Beaird, of Tyler, for appellant.

J. A. Bullock and Maynor, Ramey & Storey, all of Tyler, for appellee.

WILLSON, C. J. (after stating the facts as above). [1-3] It will be noted that appellee in its contract with appellant reserved "the right at all times to require" her "to

board in homes" it approved. As commonly used, the word "board" means lodging as well as food. Century Dictionary; Heron v. Webber, 103 Me. 178, 68 Atl. 744. That it was used in that sense in the contract will not be doubted, when the obvious reason why the reservation was made is kept in mind. The plain meaning of the stipulation was that appellee was to have the right while appellant attended its school to require her to room, as well as to take her meals, at homes it approved.' It was not against either the law or public policy for the parties to so contract. Therefore the stipulation was a valid one, and appellee was acting within its lawful right under the contract when it insisted that appellant should move from Mrs. Alford's to another rooming house. But appellant insists that, if appellee had such a right, the penalty provided by the contract for a refusal by her to comply with the requirement was only to limit her scholarship to 3½ months, and that appellee had no right to expel her from the school because of such refusal. The answer to that is, we think, that it did not appear from the testimony that appellee expelled appellant from the school. All it did was to insist that she cease her attendance at its school until she complied with the demand it made on her to move to another rooming house. So far as the testimony in the record shows to the contrary, there has never been a time since she was requested to move from Mrs. Alford's when appellant has not been at liberty to resume her attendance at the school on her compliance with the demand she agreed by her contract appellee might make of her.

The judgment is affirmed.